UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:16-CR-56-GFVT-HAI-3 |
| ) | |
| v. ) | RECOMMENDED DISPOSITION |
| ) | |
| ROBIN LAWSON, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, considers reported supervised release violations by Defendant Robin Lawson. D.E. 519. District Judge Van Tatenhove entered a judgment against Defendant on October 12, 2017, following a plea of guilty to a violation of 21 U.S.C. § 846, conspiracy to distribute fifty grams or more of mixture or substance containing a detectable amount of methamphetamine. D.E. 208. Defendant was sentenced to forty-six months of imprisonment, followed by four years of supervised release. *Id.* at 2-3. Defendant was released from custody to begin service of her four-year term of supervision on March 5, 2020.

On April 8, 2020, the Court approved the United States Probation Office's (the "USPO") request that no action be taken after Defendant and Michael Eversole, who is a convicted felon under supervision in case number 6:17-CR-47-REW-HAI, were found to be involved in a romantic relationship. On March 22, 2021, the Court issued a warrant following a report that Defendant used Oxycodone without a prescription. Defendant admitted to the use of Oxycodone. The Court granted the motion of the United States for no action to be taken and released

1

Defendant on her original conditions. On December 17, 2021, the Court approved the USPO's request that no action be taken after Defendant was terminated from her substance abuse treatment program due to her lack of attendance. Defendant subsequently enrolled in another substance abuse treatment program. On May 10, 2022, the Court approved the USPO's request that no action be taken after Defendant missed two substance abuse treatment sessions following an incident of domestic violence perpetrated against her by her husband, Michael Eversole.

I.

On April 14, 2023, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges Defendant with two violations. According to the Report,

> On April 6, 2023, this officer conducted a home visit and was informed Lawson had left the residence approximately two weeks prior and was suspected to be with Michael Eversole.
>
> On April 7, 2023, Lawson contacted this officer by phone and confirmed she was staying at Eversole's residence and had been there since approximately March 29, 2023. Lawson did not have permission to leave her approved residence or reside with Eversole.

Stemming from this conduct, Violation #1 alleges Defendant violated the condition requiring her to live at a place approved by the USPO and notify the USPO ten days prior to any change in her living arrangements. If prior notification is not possible, the condition requires Defendant to notify the USPO within seventy-two hours of any change. This is a Grade C violation.

The Report also indicates that Defendant "confirmed she contacted Eversole on or about March 29, 2023, and left with him to go to his residence." However, Defendant "did not have permission to communicate or interact with Eversole unless it directly related to parenting their shared child." Thus, Violation #2 alleges Defendant violated the condition prohibiting her from

2

interacting with a convicted felon without first obtaining permission to do so from the USPO. This is another Grade C violation.

On April 24, 2023, Defendant traveled with Eversole to attend his initial appearance on his own set of supervised-release-violation allegations. Eversole was released on his existing conditions and was allowed to return to his residence with Defendant, but was instructed to find another place to reside pending his final hearing.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on May 1, 2023. D.E. 521. Defendant appeared on a summons. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of her right to a preliminary hearing. *Id.* Defendant was released on her existing conditions.

The Court conducted a final hearing on May 4, 2023. D.E. 523. This was a combined final hearing that also included Michael Eversole (case # 6:17-CR-47-REW-HAI). Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. *Id.* Defendant waived a formal hearing and stipulated to Violation #1 as set forth in the Report. *Id.* The government made an oral motion to dismiss Violation #2. The Court found Defendant to be competent to stipulate to Violation #1 and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that she engaged in conduct that is a Grade C violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(3).

3

At the final hearing, the government recommended a term of imprisonment of five months with no additional term of supervision to follow. Defense counsel requested no revocation, or, in the alternative, a below-Guidelines sentence of no more than thirty days of home detention.[1]

The government focused on Defendant's history and characteristics. Despite being given breaks in the past (such as her three 12As in this case), Defendant simply will not comply with her conditions. The government stressed that Defendant and Eversole have a "volatile" relationship with "undercurrents" of violence. Defendant previously reported that Eversole had assaulted her in the presence of their child, though she subsequently withdrew the complaint. The government also noted that Defendant and Eversole are recovering addicts and have both struggled with complying with treatment programs. The government argued that imprisonment is the only way to keep Defendant and Eversole separated, at least for a time.

The defense argued that there are several reasons supporting its recommendation that no revocation occur. Defense counsel stated that there is no evidence of a "nefarious plot" between Defendant and Eversole to engage in crime. Defendant tested negative for any drugs following the several days she was with Eversole. Defense counsel also stated that Defendant is attending college online and takes care of her two-year-old child. Defense counsel argued that any term of imprisonment would be counterproductive to the progress Defendant has made while on release.

Defendant addressed the Court and apologized for her actions. Defendant stated that she called Eversole after a disagreement with her grandmother and "wanted to have stuff in order" before calling the USPO about her change in living arrangements.

---

[1] Defense counsel also requested weekend confinement in the alternative. The USPO reported that the Boone County Jail is the only facility in this District that allows weekend confinement. Because Defendant has no

II.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 21 U.S.C. § 841(b)(1)(B) is a Class B felony. *See* 18 U.S.C. § 3559. For a Class B felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade C violation. Given Defendant's criminal history category of III (the category at the time of the original conviction in this District) and a Grade C violation, Defendant's range, under the Revocation Table of Chapter 7, is five to eleven months. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the range.

---

transportation of her own, weekend confinement is not a feasible sentencing option.

III.

The Court has reviewed the entire record, including the Report and its accompanying documents, and Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Likewise, the parties addressed those statutory factors in making their sentencing recommendations to the Court.

One penalty factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was a participant in a methamphetamine trafficking conspiracy and also addicted to the drug. As noted by both sides, the current violation conduct is not related to the underlying crime.

The Court next considers Defendant's history and characteristics. According to the PSR, Defendant began using controlled substances at a young age and was a heavy methamphetamine user leading up to the underlying offense. Despite her two reports of noncompliance with drug treatment, Defendant has passed all drug tests since March of 2021. Defendant has also made considerable efforts to further her education by taking online college courses.

The Court also considers the need to deter criminal conduct and protect the public. Although Defendant and Eversole pose risks by interacting with one another, the current violation is not a crime and did not pose a danger to the public beyond a risk of recidivism and violence between them.

The Court must also consider whether a defendant needs any education, training, or treatment. Defendant has had difficulty complying with her treatment programs in the past. Neither party focused on this factor and it does not weigh heavily in Defendant's case.

Finally, the Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, this is Defendant's fifth report of noncompliance. Nevertheless, the revocation conduct—failing to report a change in residence and living with Eversole—was not a crime. And it posed no danger except the general risk that Defendant and Eversole could commit crimes together or that there could be violence in their relationship. That Defendant's current violation is not so serious mitigates against the severity of the breach of the Court's trust.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. The Guidelines Range here is five to eleven months, but the Court recommends 100 hours of weekend community service to commence following Michael Eversole's release from his revocation term of imprisonment. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific*

*reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, a below-Guidelines sentence is appropriate. Weekend community service will force Defendant to stay away from Eversole, contemplate her actions, and give back to society. This will also restrict Defendant's freedom, provide deterrence, and protect the public, but will not severely upset the progress Defendant has made in her personal life. Given the mitigating factors discussed above, the Court finds the recommended sentence is sufficient but not greater than necessary to address the pertinent penalty factors. The recommendation also includes continuation of Defendant's previously imposed four-year period of supervised release. Defendant is currently released on her previously imposed conditions. D.E. 208. The Court will also recommend further modifying Defendant's conditions of release to prohibit contact with Eversole except as necessary to raise their children and as approved by the USPO. The Court's goal is forced separation to protect the public, Defendant, and her child from her volatile relationship with Eversole.[2]

IV.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of Violation #1.

(2) The government's motion to dismiss Violation #2 be granted.

(3) That Defendant's release not be revoked. Instead, Defendant shall remain released on the existing conditions (D.E. 208) and serve the remainder of her

---

[2] As for Eversole, the undersigned is recommending in Judge Wier's case that his release be revoked, a term of imprisonment of five months, and no additional supervision to follow.

8

current supervision period, set to terminate on March 4, 2024, with the added conditions that Defendant shall have no contact with Michael Eversole (except as necessary to raise their children and as approved by the USPO), and that Defendant must complete 100 hours of weekend community service, to commence following Michael Eversole's release from his revocation term of imprisonment.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **SEVEN** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 9th day of May, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge